**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**MARIO KEITH VANPELT**                                                   **PLAINTIFF**
**ADC #119581**

**V.**                       **NO. 1:11CV00019-KGB-BD**

**JACK OXNER, et al.**                                                      **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.**     **Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection. An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation. A copy will be furnished to the opposing party.

If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

Mail objections to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

**II.** **Background:**

Plaintiff Mario Keith Vanpelt, an Arkansas Department of Correction ("ADC") inmate, filed this lawsuit pro se under 42 U.S.C. § 1983, alleging that Lee County Sheriff Jack Oxner and Captain James Guynes ("County Defendants") were deliberately indifferent to his medical needs after he was arrested by the Lee County Sheriff's Department in December of 2010. (Docket entry #2)

In his original complaint, Mr. Vanpelt did not name any medical providers as Defendants. After he retained counsel, however, he filed an amended complaint adding deliberate-indifference claims against Corizon, Inc., Christi Taylor, Marybeth Floyd, and Don Ball ("Medical Defendants"), as well as state-law negligence claims against Defendants Ball, Floyd, and Quibble Butler. (#89) In his amended complaint, Mr. Vanpelt also alleged that County Defendants had unlawfully arrested him in January of 2011, and that they had retaliated against him for suing them.

The County Defendants and the Medical Defendants have moved for summary judgment. (#149, #152) Mr. Vanpelt has responded to the County Defendants' motion, and Defendants Oxner and Guynes have replied. (#161, #163) Mr. Vanpelt did not respond to the Medical Defendants' motion, but instead moved to voluntary dismiss

claims against those Defendants. (#162) For reasons set out below, the County Defendants' motion for summary judgment should be granted. The Medical Defendants' motion for summary judgment, however, should be denied as moot in the light of Mr. Vanpelt's motion to voluntarily dismiss the Medical Defendants.

### III. Discussion

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). Based on this standard, the County Defendants must present evidence showing that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If they meet this burden, Mr. Vanpelt must come forward with evidence showing that there is a genuine dispute that must be decided at a trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If he does not offer enough proof to establish a necessary element of a claim, the County Defendants are entitled to judgment on that claim. *Celotex Corp.*, 447 U.S. at 322-23, 106 S.Ct. at 2552.

    A.    County Defendants' Motion for Summary Judgment

In their motion for summary judgment, the County Defendants contend that: they were not responsible for providing Mr. Vanpelt's medical care; Mr. Vanpelt was not denied medical treatment for a serious medical issue; Mr. Vanpelt was lawfully arrested

based on a valid judgment and commitment order; Mr. Vanpelt's retaliation claim fails as a matter of law; Mr. Vanpelt's official-capacity claims fail because he has not alleged that he suffered any constitutional injury as a result of a Lee County custom or practice; and they are entitled to qualified immunity.[1]

    1.    Deliberate Indifference Claim against County Defendants

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This indifference extends to "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id*.

It is undisputed that Mr. Vanpelt suffers from Type II diabetes. As a result of this condition, three of his toes and the ball of his right foot have been amputated. He wears prescription shoes with special insoles to address this condition, and he was wearing his prescription shoes when he was arrested on December 28, 2010. For purposes of considering the County Defendants' motion for summary judgment, the Court will assume that Mr. Vanpelt suffers from a serious medical condition that required attention.

---

[1] Because Mr. Vanpelt's claims fail on other grounds, the Court will not address the County Defendants' qualified immunity argument in this Recommendation.

Because Lee County does not have its own detention center, the County houses its detainees at the East Arkansas Regional Unit ("EARU") of the ADC pursuant to a contract. It is undisputed that Mr. Vanpelt was housed at the EARU upon his arrest by the Lee County officers.

Mr. Vanpelt testified that he was not permitted to wear his prescription shoes at the EARU.[2] Within several weeks, he began submitting sick-call requests, complaining that his legs and feet were swelling. On January 12, 2011, he was seen in the infirmary. (#154-1) Medical personnel noted two open wounds on Mr. Vanpelt's right foot and ankle, as well as a growth that was beginning to develop on the bottom of his left foot. (#154-1 at p.4) Mr. Vanpelt was scheduled for x-rays the following day and for an appointment with the EARU staff physician. (#154-1 at p.5) The next day, Mr. Vanpelt's left foot was x-rayed. (#154-1 at p.6)

On January 20, 2011, Mr. Vanpelt returned to the infirmary, again complaining of foot pain. (#154-1 at p.9) He was again referred to the physician for an evaluation. (#154-1 at p.9)

On January 27, 2011, Dr. Ball, the EARU staff physician, examined Mr. Vanpelt. (#154-1 at p.10) Dr. Ball determined that Mr. Vanpelt had an ulcer on the bottom of his

---

[2] In his amended complaint, Mr. Vanpelt alleged that Defendant Oxner would not allow him to wear his prescription shoes. Later, however, Mr. Vanpelt testified that when he was booked into the EARU, he "had to wear the rubber/plastic shower type shoes like everyone else." (#161-2 at p.1) Accordingly, it appears that Mr. Vanpelt has abandoned this allegation as to Defendant Oxner.

left foot.  Dr. Ball "debrided Mr. Vanpelt's ulcer by removing the dead tissue to get to viable tissue . . . [and] dressed the wound."  (#154-5 at p.5)  Dr. Ball ordered that Mr. Vanpelt's ulcer be "rechecked the following week and noted that we would refer him to the Diagnositc Unit for more in-depth debridement when his foot was ready."  (#154-5 at pp.5-6)  Dr. Ball also ordered an x-ray of Mr. Vanpelt's right foot.  (#154-1 at p.11)  Mr. Vanpelt was scheduled for x-ray the following day.  (#154-1 at p.12)

The next day, however, Mr. Vanpelt was transferred to Monroe County to resolve criminal charges pending against him there.  Upon his arrival at the Monroe County Jail, Mr. Vaneplt was transported to the emergency room for medical treatment.  (#161-5)  After he was treated, Mr. Vanpelt was released from Monroe County custody on his own recognizance.  (#151-5 at p.1)

On January 31, 2011, Mr. Vanpelt was again arrested by the Lee County Sheriff's Department and was once again placed at the EARU.  (#161-9)  According to Mr. Vanpelt, he was scheduled to be seen by a specialist at UAMS on February 3, 2011, but was not taken to that appointment.

The Defendants first argue that Mr. Vanpelt's deliberate-indifference claim against them fails because they were not responsible for providing Mr. Vanpelt's medical care.  Under Lee County's "Inmate Housing Agreement" ("the Agreement") with the ADC (#151-3), the ADC is responsible for providing "routine medical care for [Lee County] prisoners."  (#151-3 at p.4)  Routine medical care excludes "i) care not ordinarily

afforded by [the ADC's] medical services contract, and ii) care provided to [County] prisoners while temporarily removed from custody of [the ADC] due to furlough, court, or other legal and all illegal purposes." *Id*. The Agreement requires Lee County to pay the cost of medical services that are not "routine medical care." *Id*.

It is unclear whether the medical attention Mr. Vanpelt required would be considered "routine medical care" under the Agreement, but the answer to that question is not material to the pending motion. Based on the medical records presented by the Medical Defendants in support of their summary judgment motion, it is clear that the EARU infirmary staff did, in fact, monitor Mr. Vanpelt's medical needs while he was housed at the EARU. (#154-1)

The County Defendants are not referenced in those records. So even if Defendants Oxner and Guynes were technically responsible for Mr. Vanpelt's medical care, there is no evidence to support an inference that either of these County Defendants was aware that Mr. Vanpelt needed additional or different medical treatment. His deliberate-indifference claim against these Defendants, therefore, fails.

To show that the prison officials failed to provide adequate medical treatment, Mr. Vanpelt would have to prove that these Defendants knew of his serious need for care, yet deliberately disregarded that need. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Furthermore, a prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials "ignored an acute or escalating situation or that

[these] delays adversely affected his prognosis." See *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995), abrogated on other grounds by *Johnson v. Jones*, 515 U.S. 304 (1995), as recognized in *Reece*, 60 F.3d at 492 (internal quotation marks omitted)).

Here, it is undisputed that when Mr. Vanpelt completed his initial screening in December 2010, he did not have any open wounds on his feet or lower legs. (#161-6 at p.4) Although Mr. Vanpelt complained that his prescription shoes were taken from him when he was admitted to the EARU, he seems to have abandoned his claim that Defendant Oxner was responsible for that circumstance.

It is also clear that Mr. Vanpelt submitted multiple sick-call requests while he was housed at the EARU, but he has not offered any evidence to show that either Defendant Oxner or Guynes was aware of the sick-call requests. Likewise, there is no proof that Mr. Vanpelt notified either of these Defendants of the problems that he was having with his feet when he was transported to Court on January 25, 2011. Although Monroe County officials determined that Mr. Vanplet was in need of medical attention when they transported him to the emergency room several days later, there is no evidence showing that either Defendant Oxner or Guynes was aware of that need.

In response to the Defendants' motion for summary judgment, Mr. Vanpelt offers the affidavit of Rosemary Allen, his mother. (#161-3) Ms. Allen testified that on January 18, 2011, she informed Defendant Guynes that, when she visited Mr. Vanpelt, "his feet

8

and legs were grossly swollen." (#161-3 at p.2) She also testified that on January 25, 2011, she spoke with Defendant Guynes "stress[ing] the seriousness of Mario's condition and his need to see his primary care physician." (#161-3 at p.2) It is undisputed that on January 27, 2011, two days after Ms. Allen says she informed Defendant Guynes that Mr. Vanpelt needed medical attention, Dr. Ball saw Mr. Vanpelt. (#154-1 at p.10)

Mr. Vanpelt has failed to create a material dispute of fact on his deliberate-indifference claims against Defendants Oxner and Guynes. Thus, they are entitled to judgment as a matter of law.

2.  Unlawful Arrest

Mr. Vanpelt alleges that he was unlawfully arrested after he was released on his own recognizance by a jailer at the Monroe County Sheriff's Department. (#151-5) Defendants Oxner and Guynes argue, however, that Mr. Vanpelt should not have been released from custody by Monroe County officials because at the time he was released he had already been sentenced to a term in the ADC by a Lee County Judge. Defendants offer Mr. Vanpelt's judgment and commitment order as evidence in support of their motion. (#151-4)

According to the judgment and commitment order, Mr. Vanpelt appeared before the Lee County Circuit Court on January 25, 2011, and pleaded guilty to the charge of theft of property. (#151-4 at p.1) Mr. Vanpelt was sentenced to 96 months' incarceration in the ADC as a result. *Id.* Although it is undisputed that on January 28, 2011, Mr.

Vanpelt was released by Monroe County authorities, Mr. Vanpelt has failed to offer any evidence to show that he was also released from Lee County custody. Thus, there is no genuine dispute as to the facts surrounding his re-arrest. Defendants Oxner and Guynes are entitled to judgment as a matter of law on this claim.

3. Retaliation

Mr. Vanpelt also alleges that sometime after he filed this lawsuit, Defendant Guynes confronted him and threatened him with a longer sentence because he had filed this lawsuit. (#16) Defendant Guynes allegedly told Mr. Vanpelt that if he dropped the civil lawsuit, he "would see about dropping all [of his] fines and charges." (#16)

To prove a retaliation claim, a prisoner must present evidence that: he engaged in constitutionally protected activity; defendants took adverse action against him that would chill a person of ordinary firmness from engaging in that activity; and retaliation was the actual motivating factor for the adverse action. *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007); *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). The Eighth Circuit has clarified that retaliation has to have been the "actual motivating factor" behind the adverse action and that the adverse action would not have occurred "but for a retaliatory motive." *Lewis,* 486 F.3d at 1029; *Haynes v. Stephenson*, 588 F.3d 1152, 1156 (8th Cir. 2009). In other words, the prisoner cannot prevail if the adverse action was motivated by a legitimate reason as well as in retaliation for a protected activity. *Id.; Webb v. Hedrick*, Case No. 09-2896, 2010 WL 4366438, *1 (8th Cir. Nov. 5, 2010) (unpublished opinion)

(explaining that a prisoner cannot prevail "if retaliation was one factor" in the defendants' decision).

Here, it is undisputed that on April 15, 2011, the Lee County Prosecuting Attorney filed a new petition to revoke Mr. Vanpelt's probation. (#151-6) Although that petition was withdrawn twelve days later (#161-8 at p.2), Mr. Vanpelt has not offered any evidence to indicate that either Defendant Oxner or Guynes was involved in the decision to file the petition to revoke. Moreover, the criminal docket sheet reveals that the original petition for revocation was filed on January 25, 2011, prior to Mr. Vanpelt's filing this lawsuit. (#161-8 at p.2) Without any evidence showing that either Defendant was involved in pursuing the revocation petition at issue, Mr. Vanpelt has failed to create a material dispute of fact on this issue, and Defendants Oxner and Guynes are entitled to judgment as a matter of law on Mr. Vanpelt's retaliation claim.

    4.    Official Capacity Claims

A suit against a county official in his or her official capacity is the same as a suit against the county itself. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010). In *Monell v. New York Dep't. of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018 (1978), the Supreme Court held that local governments are not liable under § 1983 for injuries inflicted solely by their employees or agents. Instead, a county is liable for the acts of its employee only when the employee is carrying out a county policy or custom. *Id.*; *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 632 (8th Cir. 2009). A "policy" is a "deliberate choice of

a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Marksmeier v. Davie*, 622 F.3d 896, 902 (8th Cir. 2010). To establish a custom, a plaintiff must prove the existence of a continuing pattern of unconstitutional misconduct, not a single act. *Id*. at 902–903.

Here, Mr. Vanpelt fails to identify any Lee County policy or custom that caused him injury. As a result, his claims against Defendants Oxner and Guynes in their official capacities fail.

B.    Claims against Medical Defendants

The Medical Defendants have also moved for summary judgment on the claims Mr. Vanpelt asserts against them. (#152) After they filed their summary judgment motion, however, Mr. Vanpelt moved to dismiss his claims against the Medical Defendants. (#162) The Medical Defendants object to the Court's granting Mr. Vanpelt's motion for voluntary non-suit and seek a ruling on their motion for summary judgment. In the alternative, they ask that the Court impose costs on Mr. Vanpelt if he refiles his lawsuit against them.

There is no indication that Mr. Vanpelt abused the judicial system in filing his claims against the Medical Defendants. The Medical Defendants' motion for summary judgment was not wasted effort because it likely prompted Mr. Vanpelt's decision to move to voluntarily dismiss these Defendants. Furthermore, in the event that Mr. Vanpelt refiles suit against the Medical Defendants, they will no doubt use the effort expended in

filing the pending summary judgment motion to refile for summary judgment at that time. Thus, imposing costs upon refiling would be for the sole purpose of chilling Mr. Vanpelt from refiling. For that reason, Judge Baker should decline to impose costs on Mr. Vanpelt.

**IV.    Conclusion:**

The Court recommends that the summary judgment motion submitted by Defendants Oxner and Guynes (#149) be GRANTED, and that Mr. Vanpelt's claims against Defendants Oxner and Guynes be DISMISSED, with prejudice. The Court also recommends that Mr. Vanpelt's voluntary motion to dismiss claims against Defendants Corizon, Taylor, Floyd, and Butler (#162) be GRANTED, and that those claims be DISMISSED, without prejudice. The Court further recommends that the Medical Defendants' motion for summary judgment (#152) be DENIED as moot.

DATED this 1st day of July, 2014.

_____
UNITED STATES MAGISTRATE JUDGE